The Full Commission has reviewed the prior Opinion and Award based on the record of the proceedings before Deputy Commissioner Lorrie L. Dollar and the briefs and oral arguments on appeal. The appealing party has not shown good ground to reconsider the evidence, receive further evidence or to amend the prior Opinion and Award.
 EVIDENTIARY RULING
Following the hearing before the Deputy Commissioner, the depositions of Susan Apple Fuller, Kenneth O'Rourke, M.D., Suzanne Keddie, M.D., Jeffrey Schmidt, M.D., and Kevin L. Speight, M.D., were received into evidence. The objections raised therein are ruled upon in accordance with the law and this Opinion and Award.
**************
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in the I.C. Form 21, Agreement for Compensation, which was approved by the Commission on July 29, 1993, in the I.C. Form 26 Supplemental Agreement, which was approved by the Commission on September 14, 1993, in their Pre-Trial Agreement which was filed on May 1, 1995, all of which are incorporated herein by reference, and at the hearing on May 11, 1995 as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Defendant was a duly qualified self-insured, with Key Risk Management Services, Inc., as the servicing agent.
3. An employee-employer relationship existed between the parties at all relevant times.
4. Plaintiff sustained an admittedly compensable injury on April 17, 1993.
5. Plaintiff's average weekly wage was $255.20, which yields a compensation rate of $170.14 per week.
6. Judicial Notice is taken of the Form 24 Application to Terminate Compensation, which was approved by the Commission on May 3, 1994, as well as the March 4, 1994 Memorandum from Steve Berck, and the March 8, 1994 letter of Susan Fuller to the plaintiff.
7. The parties stipulated 138 pages of rehabilitation records and thirteen pages of records from Employee Health.
8. Plaintiff has not received weekly compensation for the period of March 3, 1994 to the present, except that defendant paid benefits to plaintiff for the period of March 1, 1995 through May 1, 1995, for which defendant seeks a credit against any permanent partial disability benefits or other compensation which may be due the plaintiff.
9. The issues for determination are:
 a. Is plaintiff entitled to compensation pursuant to further compensation as a result of the admittedly compensable injury?
 b. Did plaintiff unjustifiably refuse to accept work suitable to her capacity?
Additionally, the parties filed a Joint Stipulation on September 24, 1996, which consisted of a Report of the Greensboro Police Department of a December 7, 1988 motor vehicle accident involving the plaintiff, a Report of the Greensboro Police Department involving a November 12, 1989 motor vehicle accident involving the plaintiff, and the Initial Application for Social Security Disability benefits.
*************
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. At the time of the admittedly compensable injury, plaintiff was a forty year old female high school graduate, who was employed as a Nursing Technician I. The plaintiff's duties included assisting with all elements of hospital patient care, including bathing, feeding, assisting patients with personal needs, and moving patients. As plaintiff was assisting in moving a patient onto a chair, she experienced a pop in her back.
2. Plaintiff reported this incident and was referred to Employee Health. She was subsequently referred to Dr. Mark Yates, an orthopedist, on May 12, 1993. Plaintiff was authorized to remain out of work for two weeks as a result of the back injury, and was, thereafter, referred to Dr. Jeffrey Schmidt, a neurologist.
3. Plaintiff was seen by Dr. Schmidt on May 13, 1993, during which she exhibited clonic response in the right leg. An MRI, EMG, and somatosensory evoked response studies were reported as negative, indicating no organic cause of the clonic activity. Dr. Schmidt diagnosed plaintiff with a lumbar sprain injury with S1 nerve root radiculopathy. A course of physical therapy was ordered during which plaintiff was authorized to remain out of work.
4. On July 15, 1993, following therapy, Dr. Schmidt approved plaintiff to return to work as a sitter on the oncology floor, provided she was not required to perform lifting. Plaintiff briefly returned to this job, but then was excused from work due to complaints of pain upon sitting or standing for any period of time.
5. On August 11, 1993, Dr. Catherine Weymann saw plaintiff on behalf of Dr. Schmidt. Plaintiff complained of right buttock pain radiating down the leg in a diffuse distribution which did not follow a dermatomal pattern. An additional course of therapy was ordered.
6. After plaintiff made little progress in physical therapy, the therapist recommended a functional capacity evaluation (FCE) to determine plaintiff's objective capabilities.
7. On December 16, 1993, plaintiff was referred to the High Point Pain Management Center where she underwent a multi-disciplinary evaluation by nursing, physician, physical therapy, and psychology staff. She was diagnosed with a lumbar strain with diffuse myofascial pain syndrome with hysterical features and an adjustment disorder with mixed emotional features. The professional staff recommended plaintiff as a suitable candidate for the four-week full treatment program.
8. Plaintiff was discharged from the Pain Clinic on or about January 19, 1994, at which time she advised the pain center director, Dr. Suzanne Keddie of her intent to file for social security disability to protect herself.
9. In the discharge summary, dated January 20, 1994, Dr. Keddie, a board certified anesthesiologist, noted plaintiff had little change in her complaints of pain, though her mobility, strength, and stamina improved. The FCE, which measured plaintiff's ability to stand, sit, walk, push, lift, and pull, found plaintiff capable of performing sedentary level work. Although plaintiff was contacted by telephone three times in February and once by letter, she did not return to follow-up at the Center.
10. On January 25, 1994, after reviewing FCE results, Dr. Schmidt released plaintiff to return to modified duty for six weeks with no lifting of more than ten pounds, and no frequent stooping or bending. However, in early February, plaintiff called Dr. Schmidt, advising she could not work due to pain. After her call, Dr. Schmidt wrote a February 4, 1994 note excusing plaintiff from work on February 3 for an indefinite period of time.
11. On February 8, 1994, plaintiff returned to Dr. Schmidt, who found she had reached maximum medical improvement. Dr. Schmidt rated plaintiff as retaining a seven and one-half percent (7 1/2%) permanent partial impairment to her back due to her myofascial pain syndrome and chronic pain.
12. On March 1, 1994, Dr. Schmidt reiterated that he had released plaintiff to return to six weeks of modified duty following which she was capable of returning to her full nursing assistant duties, based upon her medical condition and her FCE results.
13. After reviewing the job description on March 10, 1994, Dr. Schmidt approved plaintiff to return to the nutritional services job so long as she did not perform the task of cleaning cafeteria tables. He found plaintiff capable of placing plastic wrap on food trays, preparing patient snacks, carrying food trays, and retrieving items from the food line.
14. Despite this release to return to work, plaintiff refused to return to work in the nutritional services job, even though defendant modified the job to comply with Dr. Schmidt's restrictions.
15. Plaintiff has not returned to Dr. Schmidt for any treatment since February 8, 1994.
16. There is no medical condition which would interfere with the plaintiff's ability to perform the nutritional services job.
17. On March 29, 1994, plaintiff called Dr. Schmidt to advise that she had been on her own to Dr. Charles Plummer, and to request that Dr. Schmidt refer her to Dr. Plummer for a second opinion. Dr. Plummer found plaintiff capable of returning to work.
18. Plaintiff did not request authorization from defendant or the Industrial Commission for treatment by Dr. Plummer or any other medical provider after February 8, 1994.
19. Plaintiff sought unauthorized treatment on her own with rheumatologist Dr. Kenneth O'Rourke, who concurred with the chronic pain syndrome diagnosis. Dr. O'Rourke opined that he would have no objection to plaintiff attempting the nutritional service job, and the job would have been important to the treatment of her condition. He deferred as to plaintiff's capacity to perform the job to the physician treating her in March of 1994.
20. From January 6, 1994 through March 19, 1994, plaintiff sought unauthorized treatment from Dr. Kevin Speight and the Bowman Gray School of Medicine Pain Control Center. Dr. Speight agreed with Drs. Schmidt, Keddie, and O'Rourke regarding plaintiff's capability to return to work.
21. Plaintiff's refusal to accept or attempt the nutritional services job was not medically justified.
*************
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. In order to qualify for compensation under the Workers' Compensation Act, a claimant must prove both the existence and the extent of disability. Hilliard v. Apex Cabinet Co.,305 N.C. 593, 290 S.E.2d 682(1982). "If an award is made by the Industrial Commission, payable during disability, there is a presumption that disability lasts until the employee returns to work. . . ." Watkins v. Central Motor Lines, 279 N.C. 132,181 S.E.2d 588 (1971). However, as stated in Commission Rule 404(1), this presumption of continued disability is rebuttable. Stone v. G. G. Builders, 346 N.C. 154,484 S.E.2d 365 (1997). In the instant case, defendant has successfully rebutted the presumption of continued disability by showing that work suitable to plaintiff's medical condition has been available for her and was offered to her, since March 10, 1994, when Dr. Schmidt approved the nutritional services job. Furthermore, even the unauthorized medical providers concur with Dr. Schmidt that plaintiff is capable of returning to the work offered.
2. As a result of the admittedly compensable injury, plaintiff is entitled to temporary total disability compensation through March 10, 1994 and no further, due to her unjustified refusal to accept work approved by her treating physician as suitable to her physical capacity. G.S. § 97-29. Defendant is entitled to a credit for any overpayment of benefits.
3. As a result of the admittedly compensable injury, plaintiff is entitled to permanent partial disability compensation for 12.5 weeks as a result of the 7.5% rating to her back. G.S. § 97-30(23). Defendant is entitled to a credit for any overpayment of benefits.
4. Plaintiff is entitled to have defendant pay for medical expenses for authorized treatment; however, plaintiff is not entitled to have defendant pay for medical expenses for treatment sought from Dr. Plummer, Dr. O'Rourke, Dr. Speight, or Bowman Gray Pain Center, as such treatment was unauthorized. G.S. § 97-25.
*************
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, defendant shall pay temporary total disability compensation to plaintiff at the rate of $170.14 per week for the period through March 10, 1994. Defendant is entitled to a credit for any overpayment.
2. Subject to a reasonable attorney's fee herein approved, defendant shall pay permanent partial disability compensation at the rate of $170.14 per week for 12.5 weeks. Defendant is entitled to a credit for any overpayment of benefits.
3. A reasonable attorney's fee of twenty-five percent of the compensation awarded to plaintiff in paragraphs 1 and 2 above is hereby approved to be deducted from sums due plaintiff and paid directly to counsel.
4. Defendant shall pay medical expenses incurred from authorized treating physicians. However, defendant shall not be responsible for medical expenses of treatment from Drs. Plummer, O'Rourke, and Speight, or from Bowman Gray's Pain Center, as said treatment was unauthorized.
5. Defendant shall pay the costs, including the expert witness fees of: $292.00 to Jeffrey Schmidt, M.D.; $300.00 to Kevin L. Speight, M.D.; and $350.00 to Suzanne Keddie, M.D.
 S/ ______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/ ______________ DIANNE C. SELLERS COMMISSIONER
DISSENTING:
S/ ____________ THOMAS J. BOLCH COMMISSIONER